UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cr-47-PPS |
| | ) | |
| TREMAINE ERVIN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is a criminal case originally involving nearly two dozen defendants alleged to have participated in a long-running conspiracy involving the sale and distribution of narcotics. Many of the defendants have pleaded guilty but the remaining defendants are set for a joint trial next Spring. Some members of the conspiracy are alleged to have been involved in the execution of one of their confederates who they thought was cooperating with police, although oddly, they are not charged with the drug related murder. The government is instead trying to offer the murder evidence as an act in furtherance of the conspiracy. [*See* DE 393.] The specter of this explosive evidence being admitted at trial has led to the present motion before the court: one of the defendants, Tremaine Ervin, who was *not* involved in the murder seeks severance from those defendants that were allegedly involved in it. [DE 552.] But for the reasons set forth below, I find that severance is not warranted here.

I'll start with some background information before diving into the meat of Ervin's severance motion. Ervin is charged on three of the eleven counts in the Second

Superseding Indictment: (1) possession of a firearm in furtherance of a drug trafficking crime, (2) possession with intent to distribute a controlled substance, and (3) conspiracy to distribute and possess with intent to distribute controlled substances. [DE 485.] Ervin was charged after a search of the residence she shared with codefendant Yahtzee Harris, led to the recovery of a gun and drugs inside a locked bedroom. Ervin denies that she had anything to do with the drugs and guns found in the residence but, of course, a jury will have to decide that.

Originally, the thrust of Ervin's motion was that she would be unfairly prejudiced by being tried alongside her boyfriend and co-defendant Harris. She said he could offer exculpatory testimony in favor of Ervin that was unlikely to be presented in a joint trial in which he was a defendant. She says that Harris would testify that the gun and drugs were his, not Ervin's. But this argument has since fallen by the wayside: shortly after Ervin filed her motion, Yahtzee Harris entered into an agreement with the Government to plead guilty. [DE 579.]

Ervin has taken a different tack in her supplemental briefing. [DE 584.] She says that trying her alongside the remaining co-defendants is unfairly prejudicial because evidence of the homicide that she is not alleged to have had any role in will be introduced and that generally the weight of evidence against her pales in comparison to the evidence against her co-conspirators. In effect, she fears she'll be found guilty of conspiracy by association or from a spillover effect, given the presence of other defendants who were more active participants in the conspiracy. The issue is whether

less drastic measures than a separate trial will cure any possible prejudice.

"[U]nder Federal Rule of Criminal Procedure 14(a), a district court may sever properly joined charges if separate trials are necessary to avert prejudice to a party." *United States v. Simmons*, 606 F. App'x 848, 850 (7th Cir. 2015). Here, Ervin concedes that she was properly joined as a defendant pursuant to Federal Rule of Criminal Procedure 8(b). Severance is proper when there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). But, "there is a presumption that participants in a conspiracy or other criminal schemes should be tried together." *United States v. Cardena*, 842 F.3d 959, 981 (7th Cir. 2016) (citation omitted). "In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *United States v. Maggard*, 865 F.3d 960, 972, (7th Cir. 2017) (citations and internal quotations omitted). "The risk of prejudice will vary with the facts in each case." *Zafiro*, 506 U.S. at 539.

The first issue to address is the alleged murder of Lydell McLaurin, which the government contends was ordered by Antonio Walton, another co-defendant and the apparent ringleader of the conspiracy. Three of the other remaining defendants were also allegedly involved. Ervin did not play any role in the murder of McLaurin, but she is alleged to have been a willing participant in the conspiracy and McLaurin's murder is alleged to have been an act in furtherance of the conspiracy. Ervin says she will suffer

great prejudice from having this evidence introduced against her at trial alongside those individuals who were alleged to have directly participated in McLaurin's killing. She says this warrants severance.

The focus of Ervin's argument is that she is only charged with non-violent crimes, and the government concedes she was not directly involved in the killing. But there is no blanket rule of law which says that conspiracy trials should as a matter of course be divided between murders and non-murders or violent and non-violent crimes. The focus is instead on unfair spillover prejudice. I do not think severance is necessary here as the uncharged killing at issue is a discrete event and the jury will be instructed to sort the evidence out against each defendant individually. *See United States v. Jones*, 482 F.3d 60, 78 (2d Cir. 2006) (finding risk of "spillover" from murder count to other counts insufficient to warrant severance).

Of course, it is possible that Ervin will be prejudiced by this evidence. But simply the possibility of prejudice is not enough. "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of relief to be granted, if any, to the district court's sound discretion." *United States v. Morales*, 655 F.3d 608, 625 (7th 2011 (quoting *Zafiro*, 506 U.S. at 538-39). Here, I think it best to allow this issue to be resolved by a jury instruction on the issue. For starters, the jury will be instructed to consider each defendant individually on each count with which they are charged. I further expect and will certainly consider proposed jury instructions from Ervin (and any other defendants) which will work to ensure the jury considers the evidence against each

defendant fairly and that it won't unfairly find guilt only by association. And if requested by Ervin's counsel, I will instruct the jury as the evidence of the murder is being admitted (if it is admitted at all), that it should only be considered against certain defendants.

The next argument is that the evidence against Ervin is disproportionate compared to that of her co-defendants and that this will prejudice her at trial. But it is equally possible that the *lack* of involvement could work to her benefit in a joint trial. If the evidence against Ervin is as thin as she says it is, then juxtaposing it to the evidence against her co-defendants might result in her flying under the radar at trial. I have certainly seen that happen before in joint trials. In any event, "the fact that the government has greater evidence against one co-defendant does not automatically give the other defendant grounds for severance." *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009). Furthermore, in conspiracy cases, "most evidence offered at [a joint] trial would have been admissible in a trial against" an individual defendant. *Id.*

I would have more concern if the only proffered evidence of Ervin's involvement was that the guns and drugs were found "in a locked bedroom inside a jacket belonging to Yahtzee [Harris]." [DE 584 at 2.] And that's the situation in the cases cited by Ervin where a court has said severance is proper. *See, e.g.*, *United States v. Gallo*, 668 F. Supp. 736, 750 (E.D.N.Y. 1987) (stating that "spillover prejudice is greatly enhanced" and severance more likely warranted when minor participants with little evidentiary connection to the conspiracy are tried alongside the major players). But the government

tells me that it has additional evidence showing Ervin's involvement in the conspiracy including testimony from a witness that Ervin collected money and distributed crack on behalf of the conspiracy. More troubling, another witness has said that when they were short money owed to Harris, Ervin "videotaped Harris torturing the individual." [DE 566 at 7.] This evidence, if believed by the jury, would show that the nature of Ervin's alleged involvement was much more serious than she is letting on and it erodes the notion that she was ignorant or completely unconnected to the violence of the conspiracy. It instead shows the government has specific evidence of Ervin's active involvement in the criminal goals of the conspiracy and not just that she was a passive accomplice.

In sum, because I find that concerns over any possible prejudicial spillover to Ervin can be adequately addressed by instructions to the jury, her Motion for Severance and Separate Trial [DE 552] is DENIED.

SO ORDERED on August 14, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT